**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Action No. 05-cv-00756-CBS

BELGASEM BELGASEM

      Plaintiff,

v.

WATER PIK TECHNOLOGIES, INC.,

      Defendant

_____

**Order**
_____

      Defendant Water Pik Technologies, Inc. ("Water Pik") moves for summary judgment on

claims by plaintiff Belgasem Belgasem ("Belgasem") for disparate treatment, hostile work

environment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq*, and for breach of employment contract. For the reasons stated below, Water Pik's motion is

GRANTED.

## I.  BACKGROUND

      Belgasem, a native of Libya and an orthodox Moslem, worked at Water Pik  from April of

1997 until he was terminated in a reduction in force ("RIF") in January of 2003. Water Pik

initially hired Belgasem in an interim position as a Molding Machine Operator. He was promoted

to a permanent position July 6, 1997, and was promoted again to Molding Expediter on August

11, 1997.    From 1997 until March of 2000 Belgasem applied on ten separate occasions for

positions with greater pay. He was never selected. Belgasem did receive numerous pay raises

during his time at Water Pik, and in September of 2000 was promoted to Molding Service and

Repair Person, "B," a position Belgasem applied and was rejected for in February 1999.

While at Water Pik , Belgasem took three computer-based courses: Basic Molding, Improved Molding, and Advanced Molding. Belgasem also attended six different courses at Front Range Community College in Fort Collins, Colorado from January 2001 to May 2002, paid for by Water Pik. These courses were all in computer skills such as learning different kinds of operating systems and the internet.

On two occasions, Water Pik management disciplined Belgasem. First, on October 2, 2002 Water Pik issued a written and oral warning to Belgasem for spending more than ninety minutes, more than his lunch and break times combined, on personal internet use. Belgasem admits that he spent more than ninety minutes using a company computer for personal web use, but denies the assertions of Water Pik's attorneys that he accessed pornographic websites. Belgasem also asserts that co-workers spent similar amounts of time standing around and chatting and that his internet use occurred at a time when there was very little pressing work.

On December 10, 2002 Belgasem's supervisor, Brad Medich, observed Belgasem sleeping at his desk.  He told Belgasem that if he needed to take naps during his lunch breaks he needed to do so in the cafeteria, not at his desk. Medich's report describing this event does not state that Belgasem had been napping longer than his break time, nor does it characterize Medich's action as a reprimand or a disciplinary action. The report also does not state that Belgasem violated company policy.

Water Pik asserts that due to a sales decline in 2002 from $150 million to $130 million, it decided to implement a company-wide Reduction in Force ("RIF"). The record does not state when precisely Water Pik made this decision. While Water Pik Human Resource director Sherrie

2

Norman ("Norman") states that the RIF was based on each employee's "work performance record, including any disciplinary actions and their 2002 performance evaluation," the record does not contain any document formally describing the RIF criteria. Norman states that the RIF impacted several departments, but does not state which departments or how they were selected. Thirteen employees were fired in January of 2003, including Belgasem and Charles Pinkham, a Caucasian male also in Belgasem's department who, according to Norman, had the two lowest performance ratings in that department. Other than Belgasem, all other terminated employees were Caucasian.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  Once a properly supported summary judgment motion is made, the opposing party must provide specific facts showing the existence of a genuine factual issue to be tried.  *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial.  *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.  *Anderson v. Liberty Lobby,* 477 U.S. 242, 250 (1986).  Where the non-moving party has the burden of persuasion at trial, the moving party can discharge its burden by showing that "there is an absence of evidence

to support the non-moving party's case." *Celotex,* 477 U.S. at 325.

### III. DISCUSSION

Belgasem brings claims for disparate treatment, hostile work environment and retaliation under Title VII, and for breach of contract and breach of implied contract. I will consider each of these claims.

A.    Title VII Claims

1.    Legal Framework

Belgasem brings claims under Title VII for disparate treatment, retaliation and hostile work environment. These claims are governed by statutory filing requirements and the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

i.    Timeliness Requirements

A plaintiff bringing a discrimination claim under Title VII must file with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the act of discrimination, or to an authorized state agency within 300 days of the alleged action. 42 U.S.C. § 2000e-5(e)(1). Filing within these deadlines is mandatory. *National RR. Passenger Corp. v. Morgan,* 536 U.S. 101, 109 (2002). However, failure to timely file a claim is not jurisdictional in nature and is therefore subject to equitable remedies such as waiver, estoppel and equitable tolling. *Biester v. Midwest Health Services, Inc.,* 77 F.3d 1264, 1267 (10th Cir. 1996). For purposes of Title VII's filing requirements, each individual act of discrimination triggers its own deadlines. *Morgan,* 536 U.S. at 113. "Each discreet discriminatory act starts a new clock for filing charges alleging the act. The charge. . . must be filed within the time period after the discreet discriminatory act occurred." Simply put, any claims filed more than 300 days after the discriminatory act occurred

4

are time-barred under *Morgan.*

   ii. Burden-Shifting Framework

  Title VII discrimination claims follow the burden-shifting framework established in

*McDonnell Douglas.*  Under this framework, the plaintiff bears the initial burden of establishing a

*prima facie* case of discrimination by a preponderance of the evidence. *Equal Employment*

*Opportunity Commission v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1191 (10th Cir.

2000).  The defendant then must produce a "legitimate, non discriminatory reason" for this

employment decision. *Butler v. City of Prairie Village, Kansas,* 172 F.3d 736, 747 (10th Cir.

1999). If the defendant is able to articulate a valid reason, the plaintiff has the opportunity to

prove that the defendant's stated reason "was in fact pretext." *Id.* at 748.

  Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-

finder could rationally find them unworthy of credence and hence infer that the employer did not

act for the asserted non-discriminatory reasons." *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323

(10th Cir. 1997). "Mere conjecture that the employer's explanation is pretext for intentional

discrimination is an insufficient basis for denial of summary judgment." *Id.*   "Even though all

doubts concerning pretext must be resolved in the plaintiff's favor, a plaintiff's allegations alone

will not defeat summary judgement." *Id.* at 1324.

  To demonstrate that the employer's proffered reason is pretext, the plaintiff does not have

to prove that the employer acted illegally or in a discriminatory fashion. *Randle v. City of*

*Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). "[D]iscriminatory animus may be inferred from the

simple showing of pretext." *Id.* Accordingly, a plaintiff can defeat a motion for summary judgment

solely by establishing a *prima facie* case and showing pretext.  *Id.*

        2.      Disparate Treatment

        Belgasem alleges that Water Pik engaged in disparate treatment by failing to promote him,

denying him training opportunities, paying him less in raises than other employees, providing him

with an unfair performance appraisal, subjecting him to harsher and more frequent discipline, and

finally, firing him.  Water Pik challenges all of Belgasem's claims.

        I.      Failure to Promote

        Belgasem alleges that Water Pik discriminated against him because it failed to promote

him on ten separate occasions. Water Pik contends that Belgasem's claims for failure to promote

fail because the claims are time-barred, because he has not made a *prima facie* case for

discrimination, and because he has not shown that Water Pik 's explanation for his non-

promotions are pre-textual.

        Belgasem's instances of non-promotion all occurred between March of 1998 and July of

2000. Belgasem filed a charge with the Colorado Civil Rights Division ("CCRD") on July 18,

2003. Under the plain language of Title VII, and the holding of *Morgan*, these claims are time

barred because they occurred more than 300 days prior to July 18, 2003.  Belgasem argues that

his claims should be equitably tolled because he was proceeding to file a discrimination charge

against Water Pik in February 14, 2000 but Water Pik officials assured him they would address his

claims internally and asked him not to file. Belgasem states that he agreed to this request, and

contends, without authority, that this interaction with Water Pik is a sufficient basis to equitably

toll the timeliness requirements.

        While the timeliness requirements of Title VII are subject to equitable exceptions, Courts

interpret these exceptions narrowly. *Beister,* 77 F.3d at 1267. Courts should not waive Title VII's deadlines out of a mere "vague sympathy" for the plaintiff, but only where there is evidence that an employer engaged in "active deception" of a plaintiff, "actively misled" a plaintiff, where a plaintiff "has in some extraordinary way been prevented from asserting his or her rights" or where a plaintiff has been "lulled into inaction" by a defendant. *Id.* Belgasem does not provide any evidence of active deception, or even state that Water Pik made any statements to him about his filing requirements. Indeed, Belgasem states that he consulted with two lawyers about filing his claim, suggesting that he was able to determine the appropriate legal requirements and the consequences of choosing not to file. The circumstances Belgasem recounts do not constitute the kind of "active deception" necessary for equitable tolling. The claims regarding failure to promote are time-barred under Title VII.

Assuming that Belgasem's claims are timely, Water Pik asserts that Belgasem has failed to make out a *prima facie* case for discrimination. To make out a *prima facie* case for failure to promote a plaintiff must show 1) he was a member of a protected class, 2) he applied for and was qualified for the position, 3) he was rejected, and 4) the position was filled by someone else. *Jones v. Barnhart,* 349 F.3d 1260, 1266 (10th Cir. 2003).

Water Pik contends that Belgasem was not minimally qualified for six of the ten positions. In the Tenth Circuit, the challenge to a plaintiff's qualifications in a failure to promote claim is more properly considered as an employer's legitimate non-discriminatory reason for its action, the second stage of the *McDonnell Douglas* process. *Horizon/CMS Healthcare Corp.,* 220 F.3d at 1193. I will therefore assume that Belgasem can make out a *prima facie* case, and consider the absence of qualification as Water Pik's reason for not promoting him. Water Pik offers as an

additional reason for not selecting Belgasem that it hired individuals more qualified than Belgasem for each of these positions.

The burden now shifts to Belgasem to provide some evidence that Water Pik 's stated reasons are pretextual. He offers several arguments.  First, Belgasem asserts that the job requirements for these positions are "arbitrary." However, he provides only the job description for a position for which he was selected. Belgasem does not explain how arbitrary criteria for a position he was offered can show pretext for different positions for which he was denied.  Second, Belgasem contends that the fact that he was repeatedly turned down for promotion is itself evidence of pretext. Belgasem provides no authority, and I am not aware of any, suggesting that the mere existence of multiple adverse job actions constitutes evidence of pretext.

Third, Belgasem argues that Water Pik's contention that Belgasem was unqualified lacks credibility in at least one instance. Water Pik claims that Belgasem was not qualified for the Mold Service and Repair Person "B" position when he was rejected in February 1999. However,  Water Pik reversed itself and promoted him to this same position in September of 2000.  The record is, at the very least, ambiguous as to whether Belgasem was unqualified for this position in 1999. The internal job bid form shows that Belgasem received an interview. The hiring official did not check the box on the hiring form that indicates that a candidate "Does not meet all of the minimum requirements."  The record shows that Norman hand wrote on the bottom of the interview form that Belgasem "Did not meet minimum qualifications of machine shop experience," (Norman does not make this statement in her affidavit.) The Applicant Recruiting log has a handwritten note stating that Belgasem "[D]id not meet the minimum qualifications of basic machine shop experience or mold service experience."

Water Pik explains that even though Belgasem was not qualified for this position when he applied in 1999, he was qualified when Water Pik promoted him in September 2000 because he had in the interim taken three computer-based training courses. Water Pik does not explain how computer based training courses can provide the missing "machine shop experience" which purportedly rendered Belgasem unqualified in 1999. This evidence significantly undermines the credibility of Water Pik's contention that Belgasem was not minimally qualified in 1999.

However, Belgasem offers no evidence to rebut Water Pik's other rationale, that he was not the most qualified candidate. Belgasem does not challenge Norman's affidavit stating that the selectee had several years more relevant experience than Belgasem. Nor does Belgasem offer any evidence to challenge Water Pik's explanations regarding any of the other positions for which Belgasem was not selected. In general, a plaintiff must rebut all of a defendant's explanations in order to show pretext. *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir. 2000). Under certain circumstances "[S]omething less than the total failure of an employer's defense" may defeat summary judgment. *Jaramillo v. Colorado Judicial Dept.,* 427 F.3d 1303, 1310 (10th Cir. 2005). These include where the extent or nature of the pretext is "so fishy and suspicious" as to severely challenge the employer's credibility, where the employer offers a "plethora of reasons" and the plaintiff undermines several of them, and where the plaintiff rebuts the employer's objective reasons and only subjective reasons remain. *Id.*

Nothing of the sort is present here. Water Pik rejected Belgasem for ten positions, and Belgasem challenges one of Water Pik's two explanation for only one of these ten rejections, and the remaining explanation is not demonstrably subjective. Under these circumstances, Belgasem has not shown pretext, and his claim for failure to promote fails.

ii.     Denial of Training

Belgasem contends that he was denied training on numerous occasions when his co-workers, who are not Arab or Mulsim, were allowed training. Water Pik responds that this claim is time-barred, that failure to train is not an adverse job action under Title VII and that Belgasem has failed to show pretext.

The record does not indicate specifically when Belgasem's purported denial of training occurred. Since Belgasem filed his charge with the CCRD on July 18, 2003, only training that Water Pik denied after September 21, 2002 is within this filing period. Belgasem has provided no specific evidence of Water Pik denying him training after September 21, 2002. So, for the reasons described above, these claims are time barred.

Assuming that his claims are timely, Water Pik  asserts also that failure to train is not an adverse job action under Title VII. In general a plaintiff in a disparate treatment case makes out a *prima facie* case by showing (1) he is a member of a protected class, (2) he suffered an adverse job action, (3) he was qualified, and (4) the adverse job action occurred under "circumstances giving rise to an inference of discrimination." *Sorbo v. United Parcel Service,* 432 F.3d 1169, 1173 (10th Cir. 2005).

While the Tenth Circuit has not ruled directly on whether denial of training is an adverse job action, the Tenth Circuit "liberally defines" an adverse job action. *Sanchez v. Denver Public Schools,* 164 F.3d 527, 532 (10th Cir. 1998). Adverse actions are "not simply limited to monetary losses in the form of wages or benefits." *Id.* Rather, courts must take a "case by case approach," analyzing the "unique factors" in each situation. *Id.* One factor in determining an adverse action is whether the action "causes harm to future employment prospects." *Hillig v. Rumsfeld,* 381 F.3d

10

1028, 1031 (10th Cir. 2004). An employer's act must do more than *de minimis* harm, and must be "materially adverse to the employee's job status." *Id.* at 1033.

Here, Belgasem asserts that these training denials rendered him unqualified for the numerous promotions he sought compared to other employees who did receive this training. However, he offers no evidence or information on the specific training he was denied, no information on the specific qualifications for the promotions he was denied, no information on the other applicants and their relevant training and thus no evidentiary basis linking his denied training to his lack of promotion. Absent such evidence, Belgasem cannot show he suffered an adverse job action.

Finally, Water Pik asserts that Belgasem has offered no evidence of pretext to rebut its proffered reason for denying Belgasem training.  Water Pik does not clearly state its own reason for denying Belgasem training, but appears to rely on Belgasem's recitation of the facts of his training denial. Belgasem contends that the same supervisor on ten separate occasions told him he could not receive training because there was no one available to cover his position while he was in training. A reasonable jury could conclude that this explanation is pretextual, since it strains credulity to believe that only Belgasem, of all of the employees in his group, was so indispensable to Water Pik that he could not be spared for training. However, because this claim is time barred and because Belgasem has not made a *prima facie* case, this claim also fails.

iii.    Pay Disparity

Belgasem states in his complaint that he received smaller pay raises than non-Moslem employees.  There appears to be confusion about Belgasem's precise claim. Water Pik's motion addresses Belgasem's alleged claim for disparate treatment in pay based on his promotion to

11

Molding Expeditor in August of 1997, while Belgasem's Amended Complaint states that he is claiming disparate pay from his promotion of January 2000 (Amended Complaint, ¶¶ 41-44.) (Belgasem's response does not even address a disparate pay claim, so it is unclear how energetically Belgasem is even pursuing this issue.)

Water Pik contends first that this claim is time barred. Even assuming that the pay raise at issue is the 2000 pay raise Belgasem raises in his Amended Complaint, this occurred in July 2000, more than 300 days prior to the filing of Belgasem's charge with the CCRD. For the reasons stated above, this claim is time barred.

Even if this claim was timely, Water Pik contends that Belgasem does not show any evidence of pretext. But Water Pik does not offer a legitimate non-discriminatory reason for the purported smaller pay raise, leaving no argument for Belgasem to show to be pretextual. However, Belgasem's claim suffers from a more basic flaw: he offers no evidence, other than his own "information and belief," to support his claim. A *prima facie* case requires an adverse job action, and Belgasem does not provide any evidence of an actual adverse job action. In a Rule 56 motion, mere "information and belief" is insufficient. *Hilti,* 108 F.3d at 1324.

iv.     Belgasem's "Unfair" Performance Appraisal

Belgasem alleges that his performance review of March 15, 2002 was unfair, because the numerical ratings were disproportionately low compared to the actual written evaluations, because the appraisal did not include his specific accomplishments and because even after he requested that these accomplishments be added to his appraisal, Water Pik delayed months in doing so. Belgasem also claims that Water Pik delayed six months in providing him a written copy of his appraisal. Water Pik responds that these claims are time barred, not adverse job

actions and Belgasem has provided no evidence of pretext.

Since the performance appraisal was in March of 2002, more than 300 days prior to the filing of Belgasem's claim in July of 2003, it is time barred for the reasons stated above.

Even if this claim is timely, Water Pik , citing *Annett v. University of Kan.,* 371 F.3d 1233, 1237-1239 (10th Cir. 2000), contends that a poor performance appraisal is "a mere inconvenience" and does not rise to the level of an adverse action. However, Water Pik  relied on the 2002 performance evaluations to determine which employees to fire in the 2003 RIF. This is sufficient to make the negative performance evaluation an adverse action. Conversely, Belgasem provides no evidence that he was harmed by the purported six month delay in receiving the appraisal, so this is not an adverse action.

Water Pik  also contends that Belgasem has provided no evidence of pretext. However, one again Water Pik does not proffer any legitimate non-discriminatory reason for providing Belgasem a poor review. There is therefore no explanation in the record for Belgasem to show to be pretextual. While Belgasem's *prima facie* case, absent an explanation from Water Pik, might be sufficient to deny summary judgment, I nevertheless must grant summary judgment to Water Pik on this claim because it is time-barred.

    v.  More frequent and harsher discipline

Belgasem alleges that he was subject to more frequent and more severe discipline than non-protected employees.  In order to make out a *prima facie* case of discrimination in a case of improper discipline, Belgasem must show that  1) he was a member of a protected class, 2) he was disciplined by Water Pik, and 3) that Water Pik disciplined him "under circumstances giving rise to an inference of racial discrimination." *Jones v. Denver Post Corp.,* 203 F.3d 748, 753

(10th Cir. 2000).

Water Pik responds that it had a legitimate basis for both of its disciplinary actions against Belgasem. The September 25, 2002 discipline was justified by Belgasem's overuse of personal time on the internet and his viewing of inappropriate websites; while the December 10, 2002 instance was justified by more than one report that Belgasem was sleeping on the job. Water Pik contends that Belgasem cannot meet his burden to show that its explanations for either of these disciplinary actions is pretext for discrimination.

Belgasem identifies numerous inconsistencies and flaws in Water Pik's stated reasons. For example, Water Pik asserts in its briefs that Belgasem viewed "pornographic" websites, but the Norman affidavit as well as Belgasem's disciplinary report refer to "inappropriate" websites and do not use the word "pornographic." Also, the record does not contain the text of any specific policy Belgasem violated. Belgasem argues that his internet use is no different than other employees standing around and talking during their breaks. Water Pik furnishes no evidence that company policy treats internet use differently than other kinds of employee lollygagging. Belgasem also points out, and Water Pik does not contest, that his work was not actually neglected, since at that time Water Pik was facing slow times and many employees had long periods of time with no work.  Finally, while the written memo is labeled a "Second and Final Written Warning," the record contains no reference to a first warning. Belgasem states that there never was a first warning and Water Pik does not address this point.        However, these inconsistencies and weaknesses are still not sufficient to show pretext. Water Pik has asserted with affidavit testimony that Belgasem's length of time on the internet violated company policy, and Belgasem has provided no evidence that this is untrue. Belgasem's general assertion in his

14

deposition that other employees stand around and chat for comparable periods of time is not valid evidence of disparate treatment. Moreover, even if Belgasem can show that Water Pik disciplined him erroneously, to show pretext he must show that Water Pik did not in good faith believe he was violating company policy. *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999), *overruled on other grounds by National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). While Water Pik's attorneys may have overstated their case by raising the specter of pornography, and while it remains mysterious why Belgasem received a second warning without a first warning, Belgasem has not shown either that Water Pik did not believe he violated company policy, or that Water Pik gave inconsistent explanations for why it disciplined him. Belgasem has not shown pretext.

The December 10, 2002 incident is similar. The record shows that Water Pik believed that Belgasem was sleeping on the job, and he was warned about the appropriate place to take brief naps during his breaks. There is no record evidence to suggest that Water Pik did not believe in good faith that this was true.  There is thus no evidence that Water Pik's stated explanation is pretext for discrimination.

vi.   Discriminatory Discharge

Belgasem alleges that his termination was a discriminatory act in violation of Title VII. Water Pik appears to concede that Belgasem has satisfied his *prima facie* case, but contends that Belgasem has not shown that Water Pik's explanation, that it implemented a RIF for economic reasons and selected employees to be fired based on 2002 performance appraisals, is pretextual.

In a RIF context, a plaintiff generally shows pretext in three ways: arguing that his own termination does not fit the RIF criteria, that his evaluation under the RIF criteria was falsified or

manipulated to achieve his termination, or that the RIF itself is generally pretextual. *Beaird v. Seagate Technology, Inc.,* 145 F.3d 1159, 1168 (10th Cir. 1998). Belgasem seems to rely on the last two theories, that his evaluations were invalid and the RIF itself was pretextual. Belgasem offers no specific evidence that his performance appraisals were manipulated, only his own personal opinion that they were unfair. Belgasem's subjective view of his performance ratings cannot, by itself, establish pretext.

Belgasem also appears to argue that the RIF itself was pretextual, but offers no specific evidence that this is so. He does not contend that his position was not in fact eliminated, *see Pippin v. Burlington Resources Oil and Gas Co.,* 440 F.3d 1186, 1194 (10th Cir. 2006), and he does not cite any procedural irregularities in selecting him for the RIF. *Whittington v. Nordam Group Inc.,* 429 F.3d 986, 994 (10th Cir. 2005). Nor does Belgasem challenge Water Pik's RIF criteria, or dispute that he had the lowest 2002 performance rating in his group.

Rather, Belgasem contends that Water Pik official David Hull told an all-employee meeting January 6, 2003 that there would be no lay-offs among night shift workers, where Belgasem currently worked, or in Belgasem's overall division. (Water Pik contends that Hull's statement is inadmissible hearsay, but in fact it is likely not hearsay since it is an admission by a party opponent under Fed. R. Evid. 801(d)(2).)  While Hull's statement is inconsistent with Water Pik's ultimate decision to terminate Belgasem, it is not an inconsistent explanation for why Water Pik fired Belgasem. Belgasem does not claim that Hull stated that Water Pik would use a RIF methodology different from the methodology Water Pik ultimately used.  An inconsistent or incorrect explanation by a defendant does not show pretext unless it in some way undermines the defendant's proffered legitimate reason. *See Jaramillo,* 427 F.3d at1309. ("The fact that one of

[defendant's] explanations turned out to be incorrect does not necessarily create a genuine issue of fact concerning pretext."). I conclude that Belgasem has failed to show that this RIF was pretextual.

        vii.     Other Evidence of Pretext

Belgasem also contends that Water Pik systematically fired its other Moslem employees and that Water Pik delayed six months in providing Belgasem credit for his time off after his workplace injury. Belgasem does not offer these as separate claims of disparate treatment but as additional evidence that Water Pik's stated reasons for its actions against him are pretextual.

Belgasem in his deposition names several individuals who he alleges are Moslem, who were at one time employees of Water Pik and who were at some point terminated by Water Pik. But Belgasem provides no evidence regarding the circumstances of these alleged terminations. Absent any evidence to support this claim, it does not serve as additional evidence supporting his disparate treatment claims. Similarly, while it is undisputed that Water Pik did not restore Belgasem's leave for six months,  Belgasem offers no evidence that this delay caused him any harm, or that this delay is in any way unusual or atypical. This delay also does not constitute evidence of pretext.

        2.     Retaliatory Discharge

Belgasem also alleges that Water Pik fired him in retaliation for his complaints about discrimination. Water Pik contends that Belgasem fails to make out a *prima facie* case and fails to show pretext. To establish a *prima facie* case of retaliation under Title VII a plaintiff must show that he 1) engaged in some action opposed to Title VII discrimination, 2) was subject to an adverse employment action, and 3) that there is a causal link between the protected activity and

the adverse action. *Barnhart,* 349 F.3d at 1269.

The evidence underlying the retaliation claim is as follows. Belgasem left a voice mail with Theresa Hope-Reese, Vice President of Human Resources for Water Pik on December 12, 2002 stating that Brad Medich "is harassing and discriminating against me." The voice mail refers to a "hostile environment" with Medich but does not allege specifically that Medich was discriminating on the basis of Belgasem's nationality or religion. On January 9, 2003 two representatives of Water Pik Human Resources met with Belgasem to follow up on the voice mail message. According to their memo to file, Belgasem stated that Medich dealt with him in a "sarcastic" way but could not identify any instances when Medich had "discriminated against him due to his ethnicity." Belgasem was terminated January 20, 2003 as part of the RIF.

Water Pik argues that Belgasem's complaint fails to state a *prima facie* case because he did not specifically complain about racial or religious discrimination. The relevant legal standard is whether Belgasem's complaint made Water Pik aware that Belgasem was concerned about racial or religious discrimination. *Petersen v. Utah,* 301 F.3d 1182, 1188 (10th Cir. 2002). There is no question that Water Pik knew Belgasem was Moslem and Arab. When Medich spoke to Belgasem on December 13, 2002 Belgasem told Medich specifically that he felt alienated from the other employees because of his nationality. In the January 9, 2003 meeting, the Human Resource representatives asked Belgasem about any specific instances of discrimination due to his nationality. This evidence strongly suggests that both Medich and the Human Resource representatives were aware that Belgasem was concerned about racial discrimination, even though the voice mail did not raise it directly. Belgasem satisfies his *prima facie* case.

However, Belgasem still must show evidence of pretext, and he relies mainly on the same

evidence and arguments he used to support his claim for disparate treatment termination. The only other evidence he offers is the proximity in time, 39 days, between his complaint and his termination. However, proximity in time, without more, is insufficient to create an inference of pretext in a retaliation claim. *See Annette*, 371 F.3d at 1241. This evidence does not show pretext, and the claim for retaliation fails.

      3.      Hostile Work Environment

A racially abusive hostile work environment is actionable under Title VII. *Bolden v. PRC Inc.,* 43 F.3d 545, 550 (10th Cir. 1994). A plaintiff must show that under the totality of the circumstances "(1) the harassment was pervasive and severe enough to alter the terms, conditions or privileges of employment, and (2) the harassment was racial or stemmed from racial animus." *Id.* at 551. "General harassment if not racial or sexual is not actionable." *Id.* Proving harassment requires "more than a few isolated incidents of racial enmity," but requires "a steady barrage of opprobrious racial comments." *Id.*

The totality of Belgasem's evidence here is that on September 25, 2002 his supervisor, Brad Medich, approached him "from behind" to observe him while he was engaging in personal use of the company computer, on December 10, 2002 Medich "hid behind a filing cabinet" to observe him while he worked to see if he was sleeping, and that during a disciplinary meeting with his supervisors Water Pik posted a security guard outside of the door. These events do not come close to establishing the kind of pervasive harassment necessary for a hostile work environment claim under Title VII. Belgasem presents no evidence of a racial or religious animus behind any of these events. Belgasem states that he was allowed to perform Moslem rituals and prayers at work, he was allowed to take time off for religious holidays and he welcomed his co-workers'

19

curiosity about Islam. Belgasem states that no one in management ever called him a derogatory name due to his race or religion, and when asked he was unable to identify a single instance when his supervisor discriminated against him due to his race or religion. Belgasem's hostile work environment claim necessarily fails.

B.    Breach of Contract

Belgasem contends that his termination constitutes breach of contract because it violated language in Water Pik's "Ethics and Compliance Guidelines" that Belgasem received and signed when he was hired in 1997. Belgasem relies on two sections of these Guidelines for this claim. The Guidelines contain a section on "Anti-Discrimination and Anti-Harassment" that states:

> "It is our Company policy not to discriminate on the basis of race, color, national origin, religion, sex, age, disability, sexual orientation, or veteran status, nor will we tolerate sexual harassment of any employee. The Company strives to be a leader in eliminating the economic and social injustices of discrimination and expects all of its employees to be treated fairly and with dignity and respect."

The Guidelines also contain a section on "Duty to Report Violations," stating that "It is the duty of every employee who discovers a violation of Company policy to report the violation immediately, without fear of reprisal." (Emphasis in original.)  Belgasem argues that this language provides a contractual right against retaliation.

In Colorado, a company policy statement constitutes an enforceable promise if it meets two criteria. First, it must "disclose a promissory intent or constitute a commitment by the employer," and not be a "mere description of policy." *George v. Ute Water Conservancy Dist.,* 950 P.2d 1195, 1199 (Colo. Ct. App. 1997). Second, it must be "sufficiently definite to allow a court to understand the nature of the obligation undertaken." *Id.*  General commitments to equal

20

opportunity and fairness in the workplace are too vague to be legally enforceable. *See Vasey v. Martin Marietta Corp.,* 29 F.3d 1460, 1465-1466 (10th Cir. 1994).

Water Pik contends that the statements on which Belgasem relies are similarly too vague to create a contractual or quasi-contractual right. The Guidelines' section on anti-discrimination is simply a general statement of values which under Colorado law is not enforceable. However, the language that specifically urges employees to report violations and that guarantees non-retaliation is more specific. I find this language to be "sufficiently definite" to understand the nature of Water Pik's obligation. There is nothing vague about a commitment not to retaliate against employees who report discrimination. A reasonable juror could conclude that this language constitutes a commitment by Water Pik, rather than a general statement of policy.      Belgasem's problem here is that even if Water Pik has made a binding commitment not to retaliate, Belgasem has not provided sufficient evidence of retaliation, as discussed above. Put differently, even if this language does constitute an enforceable obligation in contract or quasi-contract, Belgasem has not produced evidence of breach. Since Belgasem has not produced evidence sufficient to show that Water Pik's rationale for firing him was pretext for retaliation, he cannot show that his termination violated either his statutory guarantee against retaliation or his contractual right against retaliation. This claim also fails.

It is so Ordered that Water Pik's motion for summary judgment (Docket # 35) is GRANTED and this action is DISMISSED with costs awarded to defendant.

**DONE and ORDERED,** this ___17th___ day of October, 2006 at Denver, Colorado.

              ___s/Lewis T. Babcock_____
              United States District Chief Judge